GUIDRY, Judge.
Plaintiff, Steve Slaughter, d/b/a Steve Motors and Truck Parts, appeals a judgment of the trial court dismissing his suit for damages. We affirm.
We adopt the following recitation of facts as set out by the trial judge in his reasons for judgment:
“This litigation arises out of an auction sale conducted by defendant, GUINN BROTHERS AUCTIONEERS, INCORPORATED (defendant, or Guinn Brothers) in Alexandria on September 17, 1987. Defendant JOHN E. GUINN, president of Guinn Brothers, is a licensed auctioneer and sold the property auctioned on behalf of the corporation.
Although other property was sold at the auction, the major consignor of property was Tidelands Equipment, Inc. The plaintiff, STEVE SLAUGHTER, D/B/A STEVE MOTORS & TRUCK PARTS (plaintiff, or Slaughter) had some 25 items of property for sale at the auction and also purchased three 1983 Chevrolet Kodiak dump trucks for the total sum of $39,750. Only the purchase of the trucks is at issue in this suit.
These trucks were advertised for sale in the advance brochure (P-1) as 1983 Chevrolet Kodiak dump trucks and were also listed in the buyers guide (P-2) as 1983 Chevrolet Kodiak dump trucks (items 104, 105 and 106).
Shortly after the sale plaintiff discovered that the trucks were not 1983 models as advertised and sold, but one was a 1980 model and the other two were 1981 models. Plaintiff had pre-sold the vehicles and the first knowledge he had of a problem was on September 21, 1987, four days after the sale, when representatives of the buyer arrived in Alexandria to pick up the trucks. The next day, September 22, he received the titles in the mail from Guinn Brothers and discovered the discrepancy in the model years.
The evidence shows that there had been no change in the model of Chevrolet Kodiak dump trucks from 1979 to 1988, and, therefore, one could not tell the model year by simply looking at the truck. Slaughter acknowledged that he knew this. Further, the evidence shows that Slaughter is an experienced licensed dealer who has bought and sold used trucks since 1971 and on at least one previous occasion had bought Kodiak trucks.
The record reflects that although Guinn Brothers had in their possession the ti- *878 ties to the vehicles, the brochure and other advertisements were prepared from the list of property and vehicles furnished them by Tidelands. With reference to the description of the property to be sold, the following disclaimer of warranty appeared on the brochure:
‘NOTE:
While all information contained in this brochure and other advertising has been obtained from sources deemed reliable, neither the auction company, sellers or publisher shall be liable for any errors or for the correctness of descriptions. This brochure as is all printed matter regarding this sale is merely a guide and subject to additions or deletions. All purchases are made “as is, where is” based entirely on the personal inspection and/or opinion of the purchaser and without warranty or guarantee of any kind.’
Slaughter admitted at trial that he saw and read the above disclaimer.
The buyer’s guide also contained the following language with reference to warranty:
‘WARRANTY
There shall be no guarantees or warranties, expressed or implied, statutory or otherwise of any nature as to conformity to any safety or pollution standard or to any other standard or requirement of any applicable authority, law or regulation, or fitness for any particular purpose, or merchantability, or particular age, year of manufacture, model, make or condition, or any other warranty whatsoever. No sale shall be invalidated by reason of any defect or inaccuracy in any of the lots due to being incorrectly described in this listing catalog or any other advertising or statements by Auctioneer and/or Auctioneer’s agents or employees. All advertising material and statements made have been compiled from sources deemed reliable, but the accuracy thereof cannot be guaranteed or warranted by Auctioneer, Seller or publisher. Bidder acknowledges that it is his responsibility to inspect all equipment and to make his inquiries and judgment prior to bidding on any item or items.’
Finally, at the auction, before the bidding commenced, John Guinn, the auctioneer, made the following opening statement over a loud speaker:
‘We are in no way guaranteeing any description of anything. You’ll know this machinery as good as anybody else, you need to take a look at it and remember that when you buy it, you buy it as is, where is. Once you buy it, it does belong to you at that time. If you have any doubts about it, just don’t bid on it gentlemen, cause once you buy it and the bid’s struck down, it does belong to you.’
This suit was filed on October 13, 1987 after plaintiff was unsuccessful in attempting to halt the final disbursement of the funds of Guinn Brothers to Tidelands. The evidence shows that Guinn Brothers advanced monies to Tidelands prior to the sale, the date of the sale, and on September 25, 1987, three days after the dispute was made known to it.
The initial suit was filed only against John E. Guinn and Guinn Brothers. In this suit plaintiff sought to rescind the sale; order Guinn Brothers to return to plaintiff the price he paid for the trucks; together with interest, certain damages and attorney’s fees. After the court sustained the Exception of Lack of an Indispensable Party filed by the defendant, Tidelands Equipment, Inc. was made a party defendant by plaintiff. Tidelands filed an answer in proper person and was not represented by counsel at the trial. It would appear that Tidelands is insolvent.”
The trial judge, relying on Castille v. Folck, 338 So.2d 328 (La.App. 3rd Cir.1976); West v. Klumpp, 417 So.2d 125 (La.App. 3rd Cir.1982); Newbaker v. Lanier, 497 So.2d 355 (La.App. 3rd Cir.1986); and, Voitier v. Antique Art Gallery, 524 So.2d 80 (La.App. 3rd Cir.1988), writ denied, 531 So.2d 271 (La.1988), correctly found that plaintiff had no cause of action in redhibition against Guinn and Guinn Brothers (hereafter collectively referred to as Guinn *879 or defendants) as they were disclosed agents of Tidelands. This finding is not questioned on appeal.
On appeal, Slaughter argues that the trial court erred in not finding appellees guilty of fraud and/or gross negligence. Appellant contends Guinn should have been found liable for violating La.R.S. 37:3125 and 3132 and/or La.C.C. arts. 3017 and 3018 (statutes and articles attached as appendices numbered 1 and 2 respectively).
Appellant first argues that Guinn violated the provisions of La.R.S. 37:3132 when it failed to verify the information provided by Tidelands on their descriptive list against the titles in its possession and, as a result, is responsible for the loss occasioned by its neglect. We find no force in this argument. La.R.S. 37:3132 appears in Chapter 42 of the Revised Statutes governing the licensing and conduct of auctioneers. La.R.S. 37:3132 establishes a rule of conduct for auctioneers, the violation of which rule subjects the auctioneer to punishment under another provision of Chapter 42, i.e., La.R.S. 37:3123. La.R.S. 37:3132 does not establish a separate cause of action for redress in favor of the public against auctioneers. Rather, an aggrieved party must still seek relief under theories of fraud or negligence. In any event, the record discloses no violation of La.R.S. 37:3132 inasmuch as Guinn did not knowingly misrepresent the facts or the quality of the merchandise offered for sale. Additionally, Guinn expressly cautioned prospective purchasers of the possibility of inaccuracies in the description of items found in the advance brochure and buyer’s guide and made clear that all sales would be made without guarantee or warranty and at the buyer’s risk.
We, likewise, find that plaintiff is not entitled to recovery from Guinn for negligence or fraud. There is no evidence in the record to support a finding that Guinn deliberately misrepresented the model year of the trucks. Further, Guinn had no obligation or duty to verify the manufacture dates of the trucks in question. Defendant was presented by Tidelands with a property list which appeared to be accurate. The trucks outwardly appeared to be 1983 model Kodiak dump trucks. The record reflects that only an expert on close scrutiny could have discovered otherwise. There was nothing which would have caused defendants to even suspect that the information supplied by Tidelands was erroneous. Additionally, defendants recognizing their lack of expertise in dealing with heavy construction equipment, included a written disclaimer in each piece of literature distributed in connection with the sale and verbally announced such disclaimer at the start of the sale. Plaintiff, while denying he heard the verbal disclaimer, admitted that he saw, read and understood the printed disclaimer before the sale. The parties are free to limit or diminish, by express agreement, the warranty imposed by law. See La.C.C. art. 2503; Slack v. Inglehart, 386 So.2d 967 (La.App. 3rd Cir.1980). We find the disclaimers to be effective as to Guinn.
As to the issue concerning the distribution of funds, we agree with the trial judge who stated:
“... the court rejects the argument of plaintiff that defendant breached its dual agency relationship by disbursing funds from the escrow account to Tidelands after notification of the dispute. Plaintiffs reliance on LSA R.S. 37:3125 is clearly misplaced. The statute reads:
‘A. (2) Funds belonging in part to the person who employs the auctioneer and in part to the auctioneer must be deposited therein, but the portion belonging to the auctioneer may be withdrawn when due unless the right of the auctioneer to receive it is disputed by the person who employs the auctioneer, in which event the disputed portion shall not be withdrawn until the disputed portion shall not be withdrawn until the [sic] dispute is finally resolved.’
It is only the disputed portion belonging to the auctioneer which cannot be withdrawn until the dispute is finally resolved — not the part which belongs to the person who employs the auctioneer.”
*880 Moreover, R.S. 37:3125 deals with disputes between the auctioneer and the consignor-seller over the funds derived from the sale. It does not encompass disputes between the auctioneer and a buyer or the consignor-seller and a buyer. Slaughter’s dispute with Guinn arises from Slaughter’s role as a buyer not its role as a seller, thus, La.R.S. 37:3125 is inapplicable.
Appellant’s claim that Guinn is liable to him under La.C.C. art. 3017 and/or 3018, is also without merit. La.C.C. art. 3016 states: “The broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatory of both.” It is clear that an auctioneer is not a broker, as he does not negotiate a sale between two parties, but rather' is an agent, as he offers for sale to the highest bidder on behalf of the seller. See Dumaine and Co. v. Gay, Sullivan and Co., Inc., 188 So. 163 (La.App. Orleans 1939), recalled on other grounds, 192 So. 117 (La.App.1939), order set aside, 194 La. 777, 194 So. 779 (1940). The auctioneer in no way represents the buyer but rather pits prospective buyers against one another to obtain the best selling price for the seller. Furthermore, the auctioneer has the power to accept an offer and thereby bind his seller, where a broker does not. See Brokerage, Mandate, and Agency in Louisiana: Civilian Tradition and Modern Practice, Athanassios N. Yiannopoulous, 19 La.L. Rev. 777 (1959).
For the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are taxed against plaintiff-appellant.
AFFIRMED.
APPENDIX 1
R.S. 37:
§ 3123. Violations; penalties
A. Any person who engages in auctions without a valid license violates this Chapter.
B. Any person who violates any provisions of this Chapter or any rules and regulations adopted under its authority shall be fined not more than five hundred dollars or imprisoned not more than six months, or both, for each such violation.. Each individual sale or act in connection with the conduct of an auction in violation of any provisions of this Chapter shall constitute a separate offense and violation of this Chapter.
§ 3125. Payments and accounts
A. All funds derived from an auction sale paid to an auctioneer licensed in this state or to a person, corporation, firm or combination thereof which conducted the sale, shall be deposited in one or more identifiable bank accounts maintained in the state in which the auctioneer is situated and no funds belonging to the auctioneer shall be deposited therein except as follows: (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to the person who employs the auctioneer and in part to the auctioneer must be deposited therein, but the portion belonging to the auctioneer may be withdrawn when due unless the right of the auctioneer to receive it is disputed by the person who employs the auctioneer, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
B. Every auctioneer shall pay within thirty days to the person who employs him all monies in his hands belonging to that person, except as provided in Subsection (A)(2), and render a full account of all sales and all property entrusted to him for sale by anyone employing his services whenever the owner of such money or property demands an accounting. Each auctioneer and surety on his bond shall be liable in solido to the owner thereof for all money and property coming into the auctioneer’s hands unaccounted for.
§ 3132. Representation as to quality and price
At all such sales by auction any licensee shall at all times truly and correctly represent to the public attending the auction the actual facts in respect to the quality and manufacture of the items *881 being offered for auction. It shall be a violation of this Chapter for any licensee hereunder to place what is popularly known in the trade as fictitious price tags on items sold at any such auction.
APPENDIX 2
Art. 3017. Obligations of broker towards both parties
Art. 3017. The obligations of a broker are similar to those of an ordinary man-datary, with this difference, that his engagement is double, and requires that he should observe the same fidelity towards all parties, and not favor one more than another.
Art. 3018. Liability of broker
Art. 3018. Brokers are not responsible for events which arise in the affairs in which they are employed; they are only, as other agents, answerable for fraud or faults.